**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALONZO BENTON,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  19-109** |
| **CSX TRANSPORTATION,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**TUCKER, J.**                                                                            **July 21, 2021**

Before the Court is Defendant CSX Transportation's Motion for Summary Judgment (ECF 29). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Defendant's motion is denied in all respects, as the lack of preemption under the Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10101, *et seq.* means that there are material issues of fact left for a jury.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Alonzo Benton filed this suit against Defendant CSX Transportation ("CSX") in the Philadelphia County Court of Common Pleas on December 10, 2018. Def.'s Not. Rem. 1 (ECF 1).[2] Benton's suit alleges that on August 29, 2017, as he was walking on a CSX railroad crossing sidewalk near 58th Street and Woodland Avenue in Southwest Philadelphia, he fell on tracks which were slippery due to earlier rain. The fall—which Benton contends was the result of his trailing foot slipping off the metal surface—caused him to hit his left shoulder and fracture

---

[1] This section primarily draws from the statement of facts provided by Defendant in its Motion for Summary Judgment (ECF 29). Where there are disagreements, Plaintiff's Response (ECF 30-1) and Second Amended Complaint (ECF 21) will be cited.
[2] The matter was removed to federal court on January 8, 2019. Def.'s Not. Rem. (ECF 1).

his clavicle. Mem. Opp'n. Summ. J. (ECF 30-1) 2. Recovery from the fracture required two surgeries and physical therapy. *Id.*

The crossing in question had concrete pads with steel framing around the edges. CSX's crossings are built to a set of national standards based on the amount of anticipated vehicle traffic—the 58th and Woodland crossing was built to heavy traffic specifications, which defaulted to concrete track support for durability and sturdiness reasons.

Plaintiff's suit alleges that his injuries were the result of CSX's negligence in the design and maintenance of the crossing, and failure to comply with the Philadelphia Property Maintenance Code. 2nd Am. Compl. ¶ 38(j). CSX counters that the entire suit is preempted under the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 10101, *et seq.*

CSX filed its Motion for Summary Judgment on March 30, 2020. Plaintiff filed his response on April 29, 2020.

## II.    LEGAL STANDARD

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

2

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III.    **ANALYSIS**

There remains an issue of material fact in this case due to the failure of CSX's expansive argument regarding preemption under the Interstate Commerce Commission Termination Act. While the ICCTA does have substantial preemptive power, per its purpose in ensuring a unified

3

regulatory scheme for interstate transportation, that preemption power cannot be used by freight

operators, such as CSX, to opt out of basic duties that apply to all businesses.

### A. CSX's Argument Ignores Historical and Prudential Limits on Federal Preemption

   1. *Federal Preemption Standards*

Federal preemption doctrine flows from the Constitution's Supremacy Clause, which

demarcates federal law as the supreme law of the United States and allows Congress to preempt

state law whenever the two are in conflict. U.S. Const. art. VI, cl. 2; *La. Pub. Serv. Comm'n v.

F.C.C.*, 476 U.S. 355, 368 (1986). Common law legal claims, such as those raised in ordinary

tort suits like Plaintiff's, are included in the scope of provisions that can be preempted by federal

legislation. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992) ("[C]ommon-law damages

actions . . . are premised on the existence of a legal duty, and it is difficult to say that such

actions do not impose 'requirements or prohibitions.'"). The burden of proof rests on the party

seeking to invoke federal preemption against state law. *MD Mall Assocs., LLC v. CSX Transp.,

Inc.*, 288 F. Supp. 3d 565, 592 (E.D. Pa. 2017) (citing *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d

214, 230 (3d Cir. 2001)). In analyzing the ICCTA, as with any other federal statute subject to

preemption analysis, the inquiry is "tempered by the conviction that the proper approach is to

reconcile 'the operation of both statutory schemes with one another rather than holding one

completely ousted.'" *Ford Motor Co. v. Ins. Com'r of Com. of Pa.*, 874 F.2d 926, 936 (3d Cir.

1989) (quoting *Merrill Lynch v. Ware*, 414 U.S. 117, 127 (1973)). In this case, CSX has the

burden of proving that the ICCTA preempts Plaintiff's common law negligence claims and

claims under the Philadelphia Property Maintenance Code.

2. *Overly Expansive Applications of Preemption—Including Under the ICCTA—Are Disfavored*

When interpreting a statute, interpretations that would produce absurd results are disfavored when alternative readings of the text that comport with Congress' purpose are available. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Particularly expansive claims of ICCTA preemption have been criticized and rejected by courts on this basis. In *Emerson v. Kansas City Southern Railway Co.*, the Tenth Circuit rejected CSX's claim that the ICCTA preempted a common law tort suit over flooding caused by the disposal of discarded railroad ties into a drainage ditch, in part because the railroad's argument "has no obvious limit, and if adopted would lead to absurd results." 503 F.3d 1126, 1132 (10th Cir. 2007) ("If the ICCTA preempts a claim stemming from improperly dumped railroad ties . . . the Railroad could dispose of a dilapidated engine in the middle of Main Street . . . . in this hypothetical, as in this case, the Railroad is merely disposing of unneeded railroad equipment in a cost-conscious fashion."). Similarly, in seeking to preempt a common negligence suit over a railroad crossing sidewalk, CSX is trying to create a legal shield against legal obligations other businesses— including those that engage in interstate commerce—remain subject to.

3. *STB Precedent and the ICCTA's Purpose Disfavor Application of Preemption Doctrine to Railroad Crossings*

The Surface Transportation Board (STB) is the agency created under the ICCTA—as the successor to the Interstate Commerce Commission—to regulate freight rail, among other forms of interstate transportation. It is cited by both parties in support of their interpretations of the Act. The STB has exclusive jurisdiction over, among other things, transportation by rail carriers, and the construction and operation of rail facilities. 49 U.S.C. § 10501(b). In the agency's evaluation

5

of claims relating to railroad crossings, it has also declined to subject level crossings to preemption. The STB has ruled, for example, that state eminent domain power over railroad crossings is permissible in the context of "routine, non-conflicting uses", such as nonexclusive easements for grade crossings. *Maumee & W. R.R. Corp. & Rmw Ventures, LLC*, No. 34354, 2004 WL 395835, at *2 (STB Mar. 2, 2004). In making this determination, the Board also noted that similar "[railroad] crossing cases are typically resolved in state courts", or removed to federal court when preemption issues like those before this Court are raised. *Id.* The Board has ruled that a state's "traditional authority over the safety of roads and bridges at grade separated rail/highway crossings" is not preempted by the ICCTA if those regulations don't impose an unreasonable burden on a railroad. *CSX Transp., Inc.*, No. FIN 34662, 2005 WL 1024490, at *6 (STB May 3, 2005) (approving of the holding in *Iowa, Chicago & E.R.R. v. Washington County, IA*, 384 F.3d 557, 561-62 (8th Cir. 2004)).

The STB view that railroad crossing disputes are typically the province of the states is in keeping with the historical understanding that such instrumentalities fall within the state's police power. *See Lehigh Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs*, 278 U.S. 24, 35 (1928) ("The care of grade crossings is peculiarly within the police power of the states"). Even in the post-ICCTA landscape, a recognition of this historical understanding remains. *See Maumee*, 2004 WL 395835, at *1 ("this broad Federal preemption does not completely remove any ability of state or local authorities to take action that affects railroad property. To the contrary, state and local regulation is permissible where it does not interfere with interstate rail operations, and localities retain certain police powers to protect public health and safety."). Furthermore, the ICCTA preemption provision itself is "narrowly tailored" to displace state regulation "that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, while

permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) (citation omitted). This type of preemptable regulation—which is economic in nature—is markedly different from the type of claim that Plaintiff makes. Plaintiff is making a classic negligence claim against a business operator in relation to its duty to maintain a publicly accessible walkway.

**B. Railroad Crossing Cases are not the Types of Economic Regulations Subject to ICCTA Preemption**

The kind of state laws Congress sought to preempt with the ICCTA were economic in nature. In analyzing a statute's preemptive power, a court is guided by the truism that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (Internal quotations omitted, citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996)). In describing the purpose of § 10501 of the Act, the House Report notes that the ICCTA's changes to the predecessor legislation "are made to reflect the direct and complete pre-emption of State economic regulation of railroads." H.R. REP. 104-311, at 95 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 807. In noting the changes to the statute, the report points to the elimination of a disclaimer regarding residual state police powers "in view of the federal policy of occupying the entire field of economic regulation of the interstate rail transportation system." *Id.* at 95-96. This phrasing indicates that the preemption provisions of the law are aimed at state economic regulation of railroads, and not a weapon to be used against anything that could conceivably touch upon a railroad. The suggestion that the aggressive preemption provisions of the ICCTA are solely concerned with state *economic* regulation of rail transportation continues throughout the section. *See Id.* at 96 ("Although States retain the police

powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass *all* such regulation and to be completely exclusive."). Even though courts have stated that regulations which are not "explicit" economic regulatory actions or styled as such are also preemptable under the ICCTA, those additional preemptable regulations are fundamentally economic, as the effect of "managing or governing" rail transportation goes to the economic impact that any such provision would have on a rail operator. *See N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) ("What matters is the degree to which the challenged regulation burdens rail transportation, not whether it is styled as 'economic' or 'environmental.'").

Therefore, even regulations that were not branded as "economic" are preemptable under the ICCTA *because of* their economic impact on railroads. One such regulation was a 2005 District of Columbia enactment that barred the transport of certain kinds of hazardous materials within 2.2 miles of the U.S. Capitol without a special permit from the District's Department of Transportation. *CSX Transportation, Inc.*, Fed. Carr. Cas. (CCH) ¶ 37186, 2005 WL 584026 at *1 (STB Mar. 14, 2005). The STB ruled that the regulation amounted to D.C. scheduling the freight operator's trains due to the permitting requirements it imposed, which made it a provision that "amount[ed] to 'economic' regulation". *CSX*, 2005 WL 584026 at *7.

Similarly, a Vermont construction permit regulation applicable to a proposed transfer site operated by a small freight railway, exclusively serving regional manufacturers was also preempted under the ICCTA. The regulation, despite being styled as an "environmental" and not "economic" regulation, was core to the economic proposition of the railway. *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 644 (2d Cir. 2005) (describing how the freight railway's entire business is serving as a go-between for industries moving materials a short distance along

8

their supply chain, making the facilities "integral to the railroad's operation[s]" and the regulation at issue an inherent interference to its ability to "conduct economic activities"). At the same time, while an "economic" regulation preemptable under the act affects a railway's business, a *de minimis* impact on the balance sheet of a railway is not enough. *See Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008) ("state actions are not preempted merely because they reduce the profits of a railroad").

In applying the ICCTA, the STB has not found railroads to be "exempt from other generally applicable laws", and has found that freight operators, similar to other businesses, "have some responsibility . . . to assume responsibility if they act negligently." *Bos. & Maine Corp. & Town of Ayer, Ma*, 5 S.T.B. 500, 2001 WL 458685 at * 7. Local governments can enforce their codes under the ICCTA against freight operators unless those codes "are applied in a discriminatory manner, unreasonably restrict the railroad from conducting its operations, or unnecessarily burden interstate commerce." *Id.* A negligence claim in relation to an improperly designed sidewalk, by definition, does not discriminate against a rail operator.

The implication of an argument that Plaintiff's claim *does* discriminate against freight operators is that anything with an even incidental tie to a freight railway is covered by ICCTA preemption, which would create an extraordinary shield for the conduct of freight operators from legal responsibility, as the ICCTA does not provide alternative remedies to a tort litigant. *See Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 49 (1st Cir. 2008) ("absent a clear-cut federal cause of action, a danger exists of creating gaps in protection by categorically supplanting state claims with non-existent federal remedies."). Furthermore, CSX's operations are not burdened by the relief sought by Plaintiff. *See infra* Section D.2. Therefore, the railway's preemption claims fail.

### C.  CSX Claims Preemption Based on a Standard That is Not Controlling in the Third Circuit

In their arguments for summary judgment, CSX's counsel implicitly rely on a preemption standard that is not the law in this circuit. While the Motion for Summary Judgment cites the rule that is controlling in this circuit, as determined by *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007),[3] CSX's actual briefing is focused on citations to cases across the country that applied a categorical preemption standard, which the Third Circuit has not adopted.

Categorical preemption refers to provisions that are preempted under the ICCTA because they are the kind of rules, regulations, and statutes directly contemplated by Congress to conflict with the federal regulatory scheme as to freight rail and other forms of interstate transportation. *CSX Transp., Inc.*, No. FIN 34662, 2005 WL 1024490, at *2 (STB May 3, 2005). There are two kinds of regulation that fall under this categorical preemption analysis: (1) state or local permitting or preclearance requirements that "could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities the board has authorized", and (2) state and local regulations of matters that are "directly regulated" by the STB, including "the construction, operation and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and service." *Id.* Implicit in CSX's focus on the fact that its Southwest Philadelphia rail crossing is listed in a Department of Transportation registry is an argument that Plaintiff's claims are categorically preempted, particularly with regards to the second part of the STB categorical test. *See* Def.'s Mot. Summ. J. 10-11.

---

[3] *See infra* Section D for further discussion of this standard.

In the *Waneck* case cited by CSX in their motion before this Court, for example, that court ruled for CSX on ICCTA preemption because the plaintiff's tort claims—that CSX's use of asphalt patches on a railroad crossing created an overly "humped" area that caused a bus to become wedged on the crossing and subsequently hit by a freight train—were categorically of the kind that were covered by the Act. *Waneck v. CSX Corp.*, No. 1:17CV106-HSO-JCG, 2018 WL 1546373, at *5 (S.D. Miss. Mar. 29, 2018) ("It is readily apparent that the resolution of Plaintiffs' . . . claims against CSXT for negligence arising out of the alleged 'improper maintenance' of the Main Street crossing rests entirely upon underlying issues of the crossing's design, construction, and configuration."). Other cases cited by CSX to support preemption use an identical analysis: one used the STB's categorical preemption standard from *CSX* in declaring that a claim for negligence regarding a railroad crossing was preempted. *In re Katrina Canal Breaches Consol. Litig.* No. 05-4182, 2009 WL 224072, at *6 (E.D. La. Jan. 26, 2009) (citing *CSX*, 2005 WL 1024490, at *2-4). The "myriad courts" CSX points to in finding preemption of similar claims also apply a categorical preemption analysis.[4] Def.'s Mot. Summ. J. 12.

CSX's reliance on caselaw using a categorical ICCTA preemption approach is notable because the Third Circuit never adopted it. *See MD Mall Assocs., LLC v. CSX Transportation, Inc.*, 288 F. Supp. 3d 565, 594–95 (E.D. Pa. 2017), *aff'd,* 777 F. App'x 43 (3d Cir. 2019) ("While the Third Circuit relied on STB precedent in formulating the approach to ICCTA preemption adopted in [*Susquehanna*] it has not adopted the STB's categorical approach, and this Court therefore declines to apply that approach here."). Additionally, the court in *MD Mall*

---

[4] *See e.g., Pere Marquette Hotel Partners, L.L.C. v. United States*, No. CIV.A 09-5921, 2010 WL 925297, at *5 (E.D. La. Mar. 10, 2010) (using the STB categorical preemption standard to declare railroad crossing claims preempted); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 840 (E.D. Ky. 2004) (also using a broad categorical approach in declaring that "Federal courts have also consistently held that state and local statutes, regulations and ordinances which involve railway matters do not survive ICCTA preemption challenges.")

contrasted the approach it was applying with the caselaw that CSX was relying upon to claim ICCTA preemption, stating that the courts which *did* find the type of preemption CSX sought were using the categorical standard. *See Id.* at 595 n.30. Instead, the approach that the Third Circuit has applied to ICCTA preemption challenges is a variant of the STB's "as applied" standard. *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252-53 (3d Cir. 2007). This "as applied" standard is what needs to be met for the preemption of Plaintiff's claims, and CSX is unable to do so.

**D. Plaintiff's Claims Stand Under the Third Circuit's *Susquehanna* Test**

A state law which affects rail carriage survives preemption under the ICCTA if it (1) does not discriminate against rail carriage, and (2) does not unreasonably burden rail carriage. *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 254 (3d Cir. 2007). Plaintiff's claims do neither, and as such preemption will not be granted.

1. *Plaintiff's Claims do Not Discriminate Against Rail Transport*

Plaintiff's claims do not discriminate against rail transport because they rely on legal rules that are generally applicable and not used to single out rail operators for particular scrutiny. A discriminatory statute for the purposes of ICCTA preemption is one where "a state is regulating principally to discriminate against a specific industry." *Susquehanna*, 500 F.3d at 254. Standard fire, building, and electric codes pass muster under the STB's as-applied analysis because the costs of compliance are "'incidental' when they are [budget line items] that all firms build into the cost of doing business". *Id.* (citing *Borough of Riverdale*, 4 S.T.B. 380, 1999 WL 715272 at *6). A state regulation that passes muster under this first prong "must address state concerns generally, without targeting the railroad industry." *Susquehanna*, 500 F.3d at 254.

In arguing that Plaintiff's suit is preempted, CSX contends that the claims in this suit, because they are "directed explicitly" at rail crossings, "discriminate against" rail transportation. Def.'s Mot. Summ. J. 9. But the standard for "discrimination" is something more than the mere fact that a regulation or provision affects a railroad—this is the whole point behind the STB pronouncement (ratified by the Third Circuit) that regular building codes can be enforced against rail operators; these are costs that any business incurs. *See Susquehanna*, 500 F.3d at 254. Plaintiff's negligence claims are the type that any business can be subject to, and the STB has specifically ruled that ICCTA preemption is not a free pass from the possibility of ordinary tort liability. *Bos. & Maine Corp. & Town of Ayer, Ma*, 2001 WL 458685 at *7. If a negligence claim relating to a railroad crossing can constitute preemptable regulation under the ICCTA, it would function as effective immunity for freight operators from entire categories of liability not contemplated by the drafters of the law. Plaintiff also makes claims citing the Philadelphia Property Maintenance Code § PM-302.3, which states, "[a]ll sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions." The code applies to "all existing residential and nonresidential structures and all existing premises" in the City of Philadelphia. *See* Phila. Property Maintenance Code § PM-101.2. Therefore, CSX is as subject to this statute as any other entity managing a sidewalk in the city. This is the platonic ideal of a regulation that "address[es] state concerns generally" and does not target the railroad industry. *Susquehanna*, 500 F.3d at 254.

Because Plaintiff's allegations are premised upon generally applicable negligence principles and a statute which applies equally to all businesses, entities, and industries that

maintain a relevant instrumentality, the claims do not "discriminate" against the railroad industry.

    2. *Plaintiff's Claims do Not Unreasonably Burden CSX's Operations*

Plaintiff's claims also pass the second prong of the *Susquehanna* standard by not unreasonably burdening CSX. A regulation is unreasonably burdensome when it "prevents the railroad from carrying out its business in a sensible fashion." *Susquehanna*, 500 F.3d at 254. Regulations in substance must be "settled and definite enough" to avoid open ended delays. *Id.* However, "state actions are not preempted merely because they reduce the profits of a railroad". *Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008). As a threshold matter, on this factual inquiry CSX bears the burden of proof. *MD Mall Assocs., LLC v. CSX Transportation, Inc.*, 288 F. Supp. 3d 565, 596 (E.D. Pa. 2017).

CSX's contention that Plaintiff's claims would pose an unreasonable burden on its operations are based on the declaration of its Director of Engineering Standards, Joshua Marschke ("Marschke Dec."). *See* Mot. Summ. J., Exhibit A (ECF 29-2). In the declaration, Marschke states that the heavy traffic of the 58th Street crossing necessitates the use of concrete pads that cost about $240 per track foot, an industry standard. Marschke Dec. ¶¶ 13-14, 20. Alternative materials that meet the traffic and durability requirements the crossing requires do not exist, according to the railway. Def.'s Mot. Summ. J. 15. Furthermore, CSX argues that a replacement of the rail crossing would require the manpower of four to five CSX employees, working 20-25 hours across two days. Marschke Dec. ¶¶ 21-22. Were this the primary remedy Plaintiff sought, perhaps this lawsuit may present an "unreasonable burden" on the railroad's operations.

Crucially, however, this is not the remedy Plaintiff focuses on. In the declaration of their rival expert, Andres J. Calderón—a consulting engineer in biomechanical, biomedical, and mechanical engineering—Calderón stated that the problem with the crossing was that there was a major difference of about a quarter to a third less slip resistance between the slicker metal edge plate of the railroad crossing and the sidewalk concrete and asphalt that Plaintiff stepped across beforehand. *See* Opp. Mot. Summ. J., Exhibit 1 ("Calderón Dec.") (ECF 30-1) ¶¶ 11, 14. The declaration contends that because a person walking—such as Plaintiff—would expect a similar degree of slip resistance along their path, the transition in surfaces without warning created a dangerous condition that caused Benton's fall. *Id.* at ¶¶ 12-13. Plaintiff contends that this problem could have been fixed by coating the metal edging with an abrasive product to bring the slip resistance of the two surfaces close enough to prevent such a fall. *Id.* at ¶ 15. This fix is purportedly "readily achievable" through paints and adhesive strips. *Id.* at ¶ 16. In the absence of such a repair, Plaintiff contends that the metal plate could have been marked by a yellow warning marker. *Id.* at ¶ 18. The wholesale replacement of the metal plate is only mentioned as an alternative remedy by Calderón.[5] Calderón Dec. ¶ 17.

The reasonableness of Plaintiff's primary remedies are implied by the fact that CSX pretended that they did not exist in its original Memorandum for Summary Judgment (ECF 29-1). When CSX did address this point in its reply brief, it reiterated that even alternative remedies would fail an "as applied" preemption analysis, pointing to the Sixth Circuit's decision in *CSX Transportation, Inc. v. City of Sebree, Kentucky*, where the court ruled that a set of local

---

[5]  The discussion of replacing the metal plate is given one paragraph of two lines in the declaration. This is compared to the two paragraphs stretching over six lines discussing the alternative coating remedy, and another two-line paragraph discussing the possibility of providing a warning to pedestrians. The remedy that CSX uses as the template to sketch out the parade of horribles that Plaintiff's suit purportedly represents to its operations is given a fourth of the airtime that alternative remedies are given. *Compare* Calderón Dec. at ¶ 17 *with* Calderón Dec. at ¶¶ 15-16 *and* ¶ 18 (demonstrating the difference in emphasis placed by Plaintiff on the competing remedies).

regulations which compelled CSX to get approval from the city council before commencing any project altering the town's railroad crossings was preempted by the ICCTA. 924 F.3d 276 (6th Cir. 2019). Even though CSX focuses on the court's statements about the proposals the town presented as alternatives, that case has little bearing on the analysis here; the law at issue in *Sebree* was a broad economic regulation of the railroad that was targeted specifically at CSX, not a lawsuit seeking compliance with broadly applicable legal rules. The preemption there flows not from the city's characterization of the remedies, but from the plaintiff's regulatory provision, which substantially differs from holding a railroad to ordinary tort liability.

Because Plaintiff's claims neither discriminate against CSX, nor unreasonably burden its operations, the suit is not subject to preemption under the ICCTA, and as a result summary judgment is denied.

## IV.    CONCLUSION

For the foregoing reasons, summary judgment for Defendant is denied. An appropriate order follows.